# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. H-4:17-cr-00725** |
| | § | |
| **LUIS ANTONIO VERAS-FIGUEROA,** | § | |
| | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and Adam Laurence Goldman, Assistant United States Attorney, and the defendant, Luis Antonio Veras-Figueroa ("Defendant"), and Defendant's counsel, pursuant to Rule **11(c)(1)(B)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.   Defendant agrees to plead guilty to Count 1 of the Indictment. Count 1 charges Defendant with Transporting, Moving, Concealing, Harboring, Shielding From Detection and Conspiring to Transport, Move, Conceal, Harbor and Shield From Detection Aliens, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii), (A)(iii), (A)(vi)(I), and (B)(i). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to

the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.  Additionally, the Parties have agreed that Defendant shall be removed from the United States as described in Addendum II to this Plea Agreement, which is incorporated by reference.

## Punishment Range

2.   The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1324(a)(1)(A)(ii), (A)(iii), (A)(vi)(I), and (B)(i), is imprisonment of not more than 10 years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of **up to 3** years. *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2).  Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation.  *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3).   Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

2

**Mandatory Special Assessment**

3.    Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.   $100 per count of conviction (18 U.S.C. § 3013).   In addition, if it is determined the defendant is not indigent, pursuant to 18 U.S.C. § 3014 (effective May 29, 2015), Defendant will pay an additional special assessment in the amount of five thousand dollars ($5,000.00).   The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

4.    Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant admits that he is not a citizen of the United States and recognizes that pleading guilty may have consequences with respect to his immigration status.   Defendant understands that because he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future.   Defendant's attorney has advised

3

Defendant of the potential immigration consequences resulting from Defendant's plea of guilty and agreeing to the terms of this Plea Agreement, including removal from the United States and inadmissibility thereafter as fully described in Addendum II. Defendant has been advised that entering into this Plea Agreement will result in his removal from the United States, a bar to his returning to the United States without express, written permission to do so from the Secretary of the Department of Homeland Security or his/her delegate, and loss of any and all rights that attach to, *inter alia*, being charged in immigration removal proceedings. *See* Addendum II to this Plea Agreement for all Immigration Consequences.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, not oppose the forfeiture

4

of assets contemplated in paragraph _____ of this agreement.   Defendant

understands and agrees that the United States will request that sentencing be

deferred until that cooperation is complete.

6.   Defendant understands and agrees that "fully cooperate," as that term is

used herein, includes providing all information relating to any criminal activity

known to Defendant, including but not limited to immigration.   Defendant

understands that such information includes both state and federal offenses arising

therefrom.   In that regard:

(a)   Defendant agrees that this plea agreement binds only the United
States Attorney for the Southern District of Texas and Defendant; it
does not bind any other United States Attorney or any other unit of the
Department of Justice;

(b)   Defendant agrees to testify truthfully as a witness before a grand
jury or in any other judicial or administrative proceeding when called
upon to do so by the United States.   Defendant further agrees to waive
his/her Fifth Amendment privilege against self-incrimination for the
purpose of this agreement;

(c)   Defendant agrees to voluntarily attend any interviews and
conferences as the United States may request;

(d)   Defendant agrees to provide truthful, complete and accurate
information and testimony and understands any false statements made
by the defendant to the Grand Jury or at any court proceeding
(criminal or civil), or to a government agent or attorney, can and will
be prosecuted under the appropriate perjury, false statement, or
obstruction statutes;

5

(e)     Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f)     Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

### Waiver of Appeal and Collateral Review

7.   Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final.    Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255.   In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6

8. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

10. The United States agrees to each of the following:

(a) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing

7

Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

(b)   Should the Defendant stipulate as to the testimony of material witnesses and waive deposing them, and plead guilty, pursuant to U.S.S.G. Section 5K3.1 and the early disposition program of the United States Attorney General and the United States Attorney for the Southern District of Texas, the United States will move for a downward departure of one (1) offense levels.

### Agreement Binding - Southern District of Texas Only

. 11.   The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment.   This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant.   It does not bind any other United States Attorney's Office.   The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

12.   The United States reserves the right to carry out its responsibilities under guidelines sentencing.   Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

13.   Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.   Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing

judge.   If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

14.   Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

(a)   If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)   At a trial, the United States would be required to present witnesses and other evidence against Defendant.   Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them.   In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf.   If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)   At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.   However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

15.   Defendant is pleading guilty because he is in fact guilty of the charges contained in Count 1 of the indictment.   If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

Co-Defendant Grisel Salas was wanted on an arrest warrant pursuant to case 4:17-cr-651.   On November 7, 2017 at 11:30 a.m., a traffic stop was conducted by the Hidalgo County Sheriff's Office and the Federal Bureau of Investigation of a silver Chevrolet Malibu with four occupants.   Defendant was the driver and he initially identified himself as Javier Enrique Cepeda, provided a driver's license with that identity, and claimed he was a U.S. citizen by way of birth in Puerto Rico. Co-Defendant Salas was one of the passengers and Defendant stated that she was his common law spouse and they both resided at 2217 Mojave Street #2, Edinburg, Texas (hereinafter referred to as the "stash house").   Co-Defendant Salas was taken into custody pursuant to the outstanding arrest warrant.   Defendant then admitted that the identity he provided was false and that his true name is Luis Antonio Veras-Figueroa and he is an illegal alien from the Dominican Republic. Defendant indicated there were four illegal aliens being harbored at their home and

11

he granted law enforcement a written consent to search the residence and provided a key to the residence.

Another occupant in the car was found to be Guillermo Esteban Margarin-Saldana, who was an illegal alien from the Dominican Republic and who admitted to being transported by the Defendants after having just crossed the border illegally.

Law enforcement then searched the stash house at approximately 2:30 p.m. Eleven illegal aliens were discovered inside the residence. All 12 individuals (the 11 illegal aliens in the house and theone illegal alien in the car) were interviewed by Border Patrol Agents (BPA).

One interview was of Stalin Manuel Garcia-Polanco, A200-595-911, who waived his *Miranda* rights and admitted he was from the Dominican Republic, and illegally entered the United States on or about November 2, 2017 by crossing the Rio Grande River. Garcia-Polanco further stated that he was previously deported on May 5, 2010, and again on July 29, 2014, from New Orleans, Louisiana. Garcia-Polanco further stated that he paid $1,800 to be smuggled into the United States. Garcia-Polanco further stated that after crossing the Rio Grande River on or about November 2, 20107, and being transported to a different location, he later made arrangements with Defendant to further smuggle him in the United States

12

and that, as a result of those arrangements, Defendant transported him within the United States to the stash house. Garcia-Polanco further stated that he was harbored, concealed and shielded from detection with 11 other illegal aliens by Defendants and Co-Defendant Salas at the stash house. Upon his arrival to this location, Garcia-Polanco indicated that Defendant ordered him to enter the stash house and told him to stay inside.

Garcia-Polanco positively identified Defendant out of a six-photograph array as the individual who transported him to the stash house, ordered him to stay inside of the stash house, and maintained the stash house. Garcia-Polanco positively identified Co-Defendant Salas out of a six-photograph array as the other individual who maintained and managed the stash house.

Another interview conducted was that of Fabiana Roberta De Silva. After waiving her *Miranda* rights, she admitted that she left Brazil on or about September 1, 2017, and illegally entered the United States with three other illegal aliens on or about October 3, 2017 by crossing the Rio Grande River. Da Silva further stated that she was to pay $20,000 Garcia-Polanco to be smuggled into the United States (specifically New Jersey), had already paid $1,000 of that total, and was to pay the remainder when she arrived at her final destination in New Jersey. Da Silva further stated that she was taken to several homes during the first fifteen days after he illegal

entry into the United States.   Eventually, she was transported to the stash house. Da Silva further stated that she was harbored, concealed and shielded from detection with 11 other illegal aliens by Defendant and Co-Defendant Salas at the stash house.

Da Silva positively identified Defendant and Co-Defendant Salas out of a six-photograph arrays as the individuals who maintained the stash house.

The other nine illegal aliens apprehended at the location were natives and citizens of Brazil.

Garcia-Polanco and Da Silva also stated that they were harbored, concealed and shielded from detection by Defendant and Co-Defendant Salas at the stash house as part of their payments to be smuggled into or within the United States and that they were instructed to not be too loud and not leave the apartment.

Defendants and Co-Defendant Salas indicated that they were hired to transport, harbor, conceal and shield from detection the undocumented aliens in furtherance of their illegal entry into the United States.   Both Defendant and Co-Defendant Salas admitted that they knew the aliens did not have documents and were illegally in the United States.

### Breach of Plea Agreement

16.   If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its

14

obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.   Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution, Forfeiture, and Fines – Generally

17.   This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest.   Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

18.   Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement.   Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to,

15

executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19.    Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer.    Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

20.    Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Forfeiture

21.    Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.    In particular, but without limitation, Defendant stipulates that the following specific property is

subject to forfeiture:   A 2009 Silver Chevrolet Malibu with Texas License Plate Number CNL-2382, VIN 1G1ZH57BX9F228692.

22.   Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

23.   Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

24.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

**Fines**

25.   Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

28.   This written plea agreement, consisting of 27 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

29.   Any modification of this plea agreement must be in writing and signed by all parties.

Filed at ___Houston___, Texas, on ___February 12___, 2018.

_____
Luis Antonio Veras-Figueroa
Defendant

Subscribed and sworn to before me on ___February___, 2018.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney

By: _____
Adam Laurence Goldman
Assistant United States Attorney
Southern District of Texas
Telephone:  713-567-9534
Facsimile:   713-718-3303

_____
Gerardo Harry Gonzales
Attorney for Defendant

19

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-4:17-cr-00725 |
| | § | |
| LUIS ANTONIO VERAS-FIGUEROA, | § | |
| | § | |
| Defendant. | § | |

## PLEA AGREEMENT -- ADDENDUM I

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case.   I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction.   Further, I have carefully reviewed every part of this plea agreement with Defendant.   To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Gerardo Harry Gonzales
Attorney for Defendant

9-12-18
Date _____

20

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me.   My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.   I have read and carefully reviewed every part of this plea agreement   with my attorney.   I understand this agreement and I voluntarily agree to its terms.


_____                    _____
Luis Antonio Veras-Figueroa                    Date
Defendant

21

## PLEA AGREEMENT – ADDENDUM II

Defendant hereby knowingly, intentionally, voluntarily, and with advice of counsel agrees to the entry by this Court pursuant to 8 U.S.C. § 1228[d](c) of a Judicial Order of Removal to the Dominican Republic.   Defendant hereby knowingly, intentionally, voluntarily, and with the advice of counsel, stipulated pursuant to 8 U.S.C. § 1228[d](c)(5), that this Court may and shall enter such order of removal as a condition of this plea agreement or as a condition of probation and does hereby waive the right to notice and a hearing to adjudicate removability. Specifically, Defendant hereby knowingly, intentionally, voluntarily and with advice of counsel, admits all allegations and concedes the removal charges as stated in the Factual Allegations in Support of Judicial Removal and the accompanying Judicial Order of Removal, and does not contest that he is removable from the United States pursuant to 8 U.S.C. §§ 1182(a)(6)(A)(i), 1182(a)(7)(A)(i), in that, pursuant to this Plea Agreement, he is present in the United States without being admitted or paroled, entered the United States at a place other than a designated port of entry, and is an immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by the Immigration and Nationality Act, and a valid unexpired passport, or other suitable travel document, or

document of identity and nationality if such document is required under the regulations issued by the Attorney General under 8 U.S.C. § 1181(a).

After consultation with counsel and understanding the legal consequences of so doing, Defendant knowingly and voluntarily waived the right to notice and hearing provided for in 8 U.S.C. § 1228[d](c)(2) and further waives any and all rights to appeal, reopen, reconsider, or otherwise challenge this Judicial Order of Removal. Defendant understands and knowingly waives his right to a hearing before an immigration judge or any other authority under the Immigration and Nationality Act on the question of Defendant's removability from the United States. Defendant further understands the rights Defendant would possess in a contested administrative proceeding and waives these rights, including Defendant's right to examine the evidence against her, to present evidence on her behalf, and to cross-examine witnesses presented by the Government.

Defendant hereby knowingly, intentionally, voluntarily, and with advice of counsel, waives his rights to any and all forms of relief or protection from removal, deportation, or exclusion under the Immigration and Nationality Act, as amended, and related federal regulations. These rights include, but are not limited to, the ability to apply for the following forms of relief or protection from removal: asylum (8 U.S.C. § 1158), parole (8 U.S.C. § 1182(d)(5)), a waiver pursuant to 8

23

U.S.C. §§ 1182(h), (i), (k), or (l), cancellation of removal (8 U.S.C. § 1229b), voluntary departure (8 U.S.C. § 1229c), withholding of removal (8 U.S.C. § 1231(b)(3)(B)), temporary protected status (8 U.S.C. § 1254a), adjustment of status (8 U.S.C. § 1255), withholding or deferral of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (Section 2242 of the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. 105-277, 112 Stat. 2681, 2681-821; 8 C.F.R. §§ 208.16-18, 1208.16-18), relief pursuant to former 8 U.S.C. § 1182(c) (8 C.F.R. §§ 212.3, 1212.3), 8 U.S.C. § 1159(c), and the Nicaraguan Adjustment and Central American Relief Act (Pub. L. 105-100, Title 11, 111 Stat. 2193 (Nov. 19, 1997)), or any other possible relief or protection from removal available under the United States Constitution, laws or treaty obligations of the United States. As part of this agreement, Defendant specifically acknowledges and states that he has not been persecuted in, and has no present fear of persecution in, the Dominican Republic on account of his race, religion, nationality, membership in a particular social group, or political opinion. Similarly, Defendant further acknowledges that he has not been tortured in, and has no present fear of torture in, the Dominican Republic.

Defendant hereby agrees to make the Judicial Order of Removal a public document, waiver his privacy rights, including his privacy rights under 8 C.F.R. § 208.6.

Defendant hereby knowingly, intentionally, and voluntarily, and with advice of counsel, agrees and stipulates to cooperate with Immigration and Customs Enforcement ("ICE") to facilitate his removal from the United States, including, but not limited to: (1) remaining in contact with a designated ICE point of contact and following all contact instructions that ICE provides; (2) assisting ICE in the procurement of any travel or other documents necessary for Defendant's removal; (3) meeting and cooperating with representatives of the country or countries to which the Defendant's removal is directed; (4) executing any forms, applications, or waivers needed to execute or expedite Defendant's removal; and (5) appear at the time and place designated by ICE for purposes of removal, or for the purpose of temporary detention in preparation for removal. Defendant further understands that his failure or refusal to assist ICE in the execution of his removal shall breach this stipulation and agreement and may subject Defendant to criminal penalties under 8 U.S.C. § 1253.

Defendant hereby knowingly, intentionally, voluntarily, and with advice of counsel, concedes that the issuance and entry of the Judicial Order of Removal

renders him inadmissible to the United States.   Defendant agrees that he will not enter, attempt to enter, or transit through the United States without first seeking and obtaining permission to do so from the Secretary of the Department of Homeland Security or other designated representatives of the United States government. Defendant stipulates that if he hereafter, without permission of the Secretary of the Department of Homeland Security, enter, or attempts to enter the United States during that time, he will not contest any criminal prosecution brought against him pursuant to 8 U.S.C. § 1326, for unauthorized entry or attempted entry into the United States.   Defendant also stipulates to the admission into evidence in any such prosecution this agreement and the Judicial Order of Removal.

Defendant agrees to accept a written order of removal as a final disposition of these proceedings and waives any and all rights to challenge any provision of this agreement in any United States or foreign court or tribunal.

If Defendant materially breaches the terms of this agreement, the United States Attorney's Office for the Southern District of Texas is relieves of its obligations under this agreement.

APPROVED:

RYAN K. PATRICK
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF TEXAS


Adam Laurence Goldman
Assistant United States Attorney
Southern District of Texas

    I have carefully reviewed every part of this Addendum II to the Plea

Agreement with my attorney.   I understand and knowingly, intelligently, and

voluntarily agree to its terms.

2-12-18
Date

LUIS ANTONIO VERAS-FIGUEROA
Defendant

    I represent Defendant as legal counsel.   I have carefully reviewed with

Defendant every part of this Addendum II to the plea agreement.   To my

knowledge, Defendant's decision to make this agreement is an informed, knowing

and voluntary one.

2-12-18
Date

GERARDO HARRY GONZALES
Attorney for Defendant

27